IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN McDONALD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CRIMINAL NO. 15-0283-WS |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**ORDER**

This matter comes before the Court on petitioner John McDonald's *pro se* filing which the Court construes as a Motion for Compassionate Release (doc. 60).

The court file reflects that McDonald entered a guilty plea to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841. On November 2, 2016, this Court sentenced McDonald to a total term of imprisonment of 84 months. According to Bureau of Prisons records, McDonald has nearly four years left to serve on that sentence, with a projected release date of June 11, 2024. He is presently incarcerated at FCI Williamsburg, a medium-security facility in Salters, South Carolina.

McDonald is one of numerous defendants who has petitioned this Court for compassionate release or modification of sentence based on the effects of the COVID-19 pandemic. In his Motion, filed *pro se*, McDonald would apparently invoke 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603 of the First Step Act enacted in December 2018. That section allows a defendant to petition the Court directly for reduction of a term of imprisonment for "extraordinary and compelling reasons," without a motion by the Director of the Bureau of Prisons ("BOP"), after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." § 3582(c)(1)(A). However, McDonald makes no showing that he ever submitted a request for compassionate release to the Warden of FCI Williamsburg. Without such a showing, McDonald is not authorized by the amended version of the statute to request

judicial modification of his term of imprisonment on the ground that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Moreover, the statute is clear that any such reduction of a sentence for "extraordinary and compelling reasons" must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's applicable policy statement, set forth at Application Note 1 to the Commentary of § 1B1.13 of the Federal Sentencing Guidelines, defines "extraordinary and compelling reasons" justifying sentence reduction as including (i) the defendant's serious medical condition diminishing his ability to provide self-care within the environment of a correctional facility; (ii) the advanced age of the defendant; (iii) family circumstances such as death or incapacitation of the caregiver of the defendant's minor children; and (iv) other reasons "[a]s determined by the Director of the Bureau of Prisons." *Id.* McDonald's Motion does not implicate the first three categories of extraordinary and compelling reasons;[1] therefore, his request would appear to rise or fall on the fourth ground identified by the Sentencing Commission.

The BOP's Program Statement 5050.50 identifies in some detail the types of reasons that the Director of the BOP deems "extraordinary and compelling" within the fourth prong of the Sentencing Commission's policy statement. Nothing in PS 5050.50 reflects a determination by the BOP that compassionate release may be appropriate based on an inmate's generalized fear of contracting COVID-19 in prison. As such, McDonald is effectively urging this Court to find that his circumstances constitute an "extraordinary and compelling reason" for § 3582(c)(1)(A) relief, even though doing so would <u>not</u> be within the scope of reasons determined by the BOP to be extraordinary and compelling and therefore would <u>not</u> be consistent with the Sentencing Commission's applicable policy statement. Simply put, then, McDonald's Motion would have this Court ignore statutory language requiring that sentence reductions for "extraordinary and compelling reasons" be consistent with Sentencing Commission policy statements by essentially superimposing the Court's own policy preferences over those of the Sentencing Commission and the Bureau of Prisons. This Court has previously declined to do so. *See United States v. Lynn*, 2019 WL 3805349, *4 (S.D. Ala. Aug. 13, 2019) ("Should the Commission so amend its policy

---

[1]    To be sure, McDonald indicates that he suffers from certain medical conditions, including HIV and "other chronic care issues." However, he makes no showing whatsoever that these conditions presently diminish his ability to provide self-care in a prison environment.

statement, the courts will of course be bound by Section 3582(c)(1)(A) to follow the amended version. Until that day, however, the Court must follow the policy statement as it stands."). It reaches the same conclusion today for the same reasons set forth in *Lynn*.

Even assuming this Court were empowered now to make determinations of "extraordinary and compelling reasons" in addition to those specified in U.S.S.C. § 1B1.13 and PS 5050.50, the undersigned would not find that the circumstances described by McDonald meet that high standard for compassionate release. To understand why, it is helpful to examine § 12003(b)(2) of the CARES Act, which granted the Attorney General authority to lengthen the maximum amount of time for which the BOP is authorized to place a prisoner in home confinement beyond the limits imposed by 18 U.S.C. § 3624(c)(2).[2] In exercising this authority, the Attorney General has issued Memoranda to the Director of the BOP dated March 26, 2020 and April 3, 2020. Among other things, those Memoranda enumerate criteria for inmates to be eligible for home confinement. Those discretionary factors include, without limitation, the following: (i) the age and vulnerability of the inmate to COVID-19, in accordance with CDC guidelines; (ii) the security level of the facility, with priority given to inmates residing in low and minimum security facilities; (iii) the inmate's conduct in prison; (iv) the inmate's score under PATTERN, with inmates scoring above the minimum score not receiving priority treatment; (v) whether the inmate has a demonstrated, verifiable re-entry plan that will prevent recidivism and maximize public safety; and (vi) the seriousness and severity of the inmate's crime of conviction and danger posed by the inmate to the community. The Attorney General also directed the BOP to maximize appropriate transfers to home confinement of all appropriate inmates held at BOP facilities where significant levels of COVID-19 infection are materially affecting operations.

Many of the non-exhaustive factors listed in the Attorney General's Memoranda do not favor home confinement or early release in this case. McDonald states that he is 53 years old, so he is not of an advanced age that might heighten his risk of contracting COVID-19. Additionally, while McDonald indicates that his HIV status "means that [he is] at a very high risk of catching COVID-19," the current medical evidence does not appear to support such a

---

[2] McDonald has specifically requested both early release and the ability to serve the remainder of his sentence under home confinement. The factors that are relevant in the home confinement inquiry are also helpful in analyzing whether a defendant should be granted early release under the First Step Act because of COVID-19 related concerns.

conclusion.  To that point, the Court takes judicial notice that the latest information on the Centers for Disease Control website (www.cdc.gov) specifies that "we believe people with HIV who are on effective HIV treatment have the same risk for COVID-19 as people who do not have HIV."[3]  Further, there is no indication and no reason to believe that an outbreak of coronavirus is happening, or is likely to happen, at FCI Williamsburg.  According to current data reported by the BOP, only one inmate (of the 180 who have been tested) at that facility has received a positive test result for COVID-19.  Also weighing against granting compassionate release are the facts that (i) McDonald is housed in a medium-security facility, not a low- or minimum-security facility; (ii) he still has nearly four years remaining to serve on his sentence, which is more than half of the overall term of imprisonment; and (iii) his crimes of conviction are serious controlled substance and firearm offenses.

After weighing all of the relevant circumstances and information presented, the Court concludes that McDonald has made no showing that he is even eligible for relief, much less any showing of the sort of "extraordinary and compelling reasons" contemplated by 18 U.S.C. § 3582(c)(1)(A)(i) that might warrant the discretionary exercise of any First Step Act authority for compassionate release, sentence modification, or release to home confinement to protect him from risks of contracting the COVID-19 virus in prison.  Accordingly, his Motion for Compassionate Release (doc. 60) is **denied**.

DONE and ORDERED this 3rd day of August, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[3]     https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/hiv.html (*retrieved* July 31, 2020).